# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEFFREY YOUNG-BEY, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-16-3435 |
| RICHARD MILLER, *et al.*, | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM

Pending is a motion to dismiss or, in the alternative, motion for summary judgment filed by defendants Warden Richard E. Miller, Former Commissioner Wayne Webb, Security Chief Todd Faith, Lieutenant Mark Cutter, and Lieutenant Dave Appel.[1] ECF 20. Plaintiff was informed by the court, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that the failure to file a response in opposition to the motion filed by defendants could result in dismissal of the complaint. ECF 22. Plaintiff has not filed an opposition to the motion. Upon review of the papers and exhibits filed, the court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the Motion will be GRANTED.

### I. Background

**A.** **Plaintiff's allegations**

The case was instituted upon receipt of a complaint filed by plaintiff Jeffrey M. Young-Bey, a former state inmate. ECF 1. Plaintiff states that on September 30, 2016, Officer Cutter ordered Officer Thomas to confiscate all of his personal and legal property and directed he be placed on administrative segregation. ECF 1 at p. 3. Plaintiff was not provided with a

---

[1] The Clerk shall amend the docket to reflect the correct spellings of defendants' names.

confiscation form or property inventory. *Id*. Later that day, plaintiff was served with a "Notice of Assignment to Administrative Segregation," which indicated he would be seen by his case management team within five days and would be given an opportunity to be heard regarding his assignment and retention on administrative segregation. *Id*. The only information provided regarding his assignment to administrative segregation was that "an investigation [was] pending in his case." *Id*.

On October 5, 2016, plaintiff appeared before Cutter and other unidentified people but was not provided an opportunity to be heard regarding his assignment. Cutter refused to explain why plaintiff was placed on administrative segregation and refused to return plaintiff's property or provide him a receipt for the items. ECF 1 at pp. 3-4.

Plaintiff also alleged that from September 30, 2016, to the signing of his complaint on October 7, 2016, he was not provided a change of clothes, clean linens, hygiene items, a clean mattress, blankets, his medically prescribed diet, or prescribed medications. ECF 1 at p. 4.

Plaintiff asserts the following causes of action:  1. Failure to Protect; 2. Failure to Supervise and Train; 3. Cruel and Unusual Punishment; 4. Denial and Interference with Access to Court; and 5. Denial of Due Process. ECF 1 at pp. 5-9.  He seeks a declaratory judgment and compensatory and punitive damages in the amount of $7,500,000.

**B.     Defendants' Response**

Lt. David Appel and Lt. Mark Cutter advise that they participated in an investigation conducted at Roxbury Correctional Institution (RCI) involving plaintiff and other inmates who were believed to be extorting commissary from the special needs inmates in their housing unit. ECF 20-3, ¶ 3 (Appel Decl.); ECF 20-4, ¶ 3 (Cutter Decl). The investigation was connected to

an investigation conducted by the Federal Bureau of Investigation (FBI) on one of the inmates suspected in the extortion. *Id.* In conjunction with the investigation and in order to determine whether there was any evidence plaintiff was involved in the extortion, Appel directed plaintiff's cell be searched and his property confiscated. ECF 20-3, ¶ 4; ECF 20-4, ¶ 4. The investigation also sought to determine whether plaintiff was holding any paperwork for the inmate that was involved in the FBI investigation. *Id.* As a result of the investigation, plaintiff was placed on administrative segregation and moved to housing unit five. ECF 20-3, ¶ 5; ECF 20-5. Once the investigators searched plaintiff's property, it was placed back in the cart in which they had received it and locked. ECF 20-3, ¶ 6; ECF 20-4, ¶ 6. The cart was then taken to plaintiff's housing unit so that it could be inventoried and the property returned to plaintiff. *Id.* Appel and Cutter each deny keeping any property placed in the cart. ECF 20-3, ¶ 7; ECF 20-4, ¶ 7. On November 1, 2016, plaintiff was cleared of the extortion accusation, removed from administrative segregation, and returned to general population. ECF 20-3, ¶ 8; ECF 20-4, ¶ 8; ECF 20-8 at p. 2 (Notification of Case Management Action).

Todd Faith, Chief of Security at RCI, avers that property confiscated due to an investigation is managed in accordance with agency directive IIU 220.0002, 220.0004 and RCI Directive 220.0004.1.[2] ECF 20-7, ¶ 3 (Faith Decl.). Inmates assigned to administrative segregation are placed there in accordance with the Case Management Manual and are provided personal property in accordance with adopted policies. *Id.*, ¶ 4. Faith offers that staff are periodically trained on the proper procedures for placement of an inmate on Administrative Segregation and the procedures regarding inmate property. *Id.*, ¶ 5. He further avers that each

---

[2] Notably, Faith does not describe any of the directives or policies referenced in his declaration. Nor has counsel provided a copy of these policies or directives in support of their motion.

officer is certified annually by the "Training Commission." *Id*. He does not explain what the Training Commission is.

Defendants have provided copies of plaintiff's pertinent medical records. ECF 20-6. On September 30, 2016, he was evaluated by medical staff who cleared him for placement on segregation. ECF 20-6 at p. 5. A "Behavioral Health Segregation Visit" note was entered on October 5, 2016, which indicated, among other things, that plaintiff's mental health status was unremarkable and that he would be continued on segregation pending the outcome of the investigation. *Id*. at p. 6. He was evaluated on October 11, 2016, by Nurse Practitioner Christine Coble. *Id*. at p. 7. At that time, plaintiff reported he was compliant with prescribed medication and denied any side effects. He expressed frustration with being placed on administrative segregation without explanation. *Id*. at p. 7. His prescription for Prozac was continued and he was provided a short term prescription for Vistaril, as needed, "for adjustment to seg." *Id*. On October 31, 2016, he was seen for another "Behavioral Health Segregation Visit." *Id*. at p. 11. His mental health status was appropriate and unremarkable. *Id*. It was noted that he was to be removed from administrative segregation as the investigation was complete. *Id*. Plaintiff was next seen by medical staff November 7, 2016, for a scheduled chronic care visit. *Id*. at pp. 12-14. No new medical concerns were noted, his medications were continued, and he was scheduled to return to the clinic in three months. *Id*.

## II. Standard of Review

**A.     Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. Goldsboro,* 178 F.3d 231,

4

243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) [*abrogated on other grounds*]. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, *see* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusional factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.      **Motion for Summary Judgment**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

### III. Discussion

**A.   Property Claims**

To the extent plaintiff claims his property was improperly seized, lost, or stolen, his claim must be dismissed. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.[3] *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[4] The

---

[3] Plaintiff may avail himself of remedies under Maryland's Tort Claims Act and through the Inmate Grievance Office.

Supreme Court extended its *Parratt* holding to intentional deprivations of property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Therefore, assuming plaintiff's personal property was destroyed, such a claim does not rise to a constitutional violation.[5]

## B. Assignment to Administrative Segregation

Plaintiff's claim that he was improperly assigned and held on administrative segregation is also unavailing. It is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison verses another, without a showing of significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). A liberty interest protected by the due process clause may be created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Thus, before deciding whether plaintiff is entitled to due process, it must be determined if the conditions under which he was confined constituted an atypical and significant hardship.

---

[4] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

[5] In rejecting a prisoner's Fourth Amendment claim to an expectation of privacy in his cell, the Supreme Court stated that denying such a claim did not "mean that [a prisoner] is without a remedy for calculated harassment unrelated to prison needs. Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity. The Eighth Amendment always stands as a protection against 'cruel and unusual punishments.' By the same token, there are adequate state tort and common-law remedies available to respondent to redress the alleged destruction of his personal property." *Hudson,* 486 U.S. at 530-31.

In making this inquiry, the court must determine what "the normative 'baseline' is: what constitutes the 'ordinary incidents of prison life' for *this particular inmate?*" *Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015) (quoting *Prieto v. Clarke*, 780 F.3d 245, 253 (4th Cir. 2015). The court then must determine "whether the prison conditions impose atypical and substantial hardship in relation to that norm." *Incumaa*, 791 F.3d at 527.

Assignment to administrative segregation does not create an atypical and significant hardship. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (superseded by statute on other grounds) (holding that administrative segregation is part of the ordinary incidents of prison life). More recently, the Supreme Court found that conditions in a maximum-security prison where human contact and communication between cells were forbidden and exercise was limited to one hour a day in a small indoor room were not enough alone to implicate a liberty interest. Rather the duration of the confinement to the prison enforcing those conditions created a liberty interest in avoiding a transfer there. *See Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005). Here, plaintiff has not alleged that the conditions of segregation were significantly more onerous than those of general population and his claim is, therefore, without merit. *See Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (conditions of administrative segregation at Maryland Penitentiary); *Knox v. Lanham*, 895 F. Supp. 750, 758-59 (D. Md. 1995) (administrative segregation at Eastern Correctional Institution).

**C.    Eighth Amendment Claim**

A prisoner must prove two elements to establish that particular conduct by prison officials constitutes cruel and unusual punishment: (1) "the deprivation of [a] basic human need was *objectively* 'sufficiently serious,'" and (2) "*subjectively* the officials act[ed] with a

9

sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citation omitted).

The plaintiff may also "demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33-35 (1993)). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *Id.* The subjective component of an Eighth Amendment claim challenging the conditions of confinement is satisfied by a showing of deliberate indifference by prison officials. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, plaintiff generally alleges that he was denied hygiene items and a clean mattress and blanket for the first week he was held on administrative segregation. The record evidence demonstrates, however, that he suffered no demonstrable injury due to his confinement on administrative segregation. "Although the availability of basic hygiene items may be considered a minimal necessity, the Eighth Amendment is only violated when the deprivation of these items is sufficiently serious or lengthy and the prison officials have acted with deliberate indifference." *Richmond v. Stigile*, 22 F. Supp. 2d 476, 480 (D. Md. 1998); *see also Parker v. Stevenson*, 625 F. App'x 196, 200 (4th Cir. 2015) (affirming summary judgment for defendants where plaintiff

failed to establish a serious or significant physical injury due to lack of mattress). Defendants are entitled to summary judgment on this claim.

**D.      Lack of Access to Courts**

Plaintiff's bald allegation that the confiscation of his property denied him access to the courts is also fruitless. Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show "actual injury" to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id.* at 352-53 & n.3. Plaintiff has failed to specify any actual prejudice he suffered from the confiscation of his materials or his placement on administrative segregation. As such, this claim is subject to dismissal.

**E.      Request for Declarative/Injunctive Relief**

Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000)

(quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)). For a declaratory judgment to issue, there must be a dispute that "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 242, 242 (1937); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Where injunctive or declaratory relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). Plaintiff was transferred from RCI to the Dorsey Run Correctional Facility (ECF 20-6) and ultimately released (ECF 9), mooting his request for declaratory relief.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or, in the alternative, for summary judgment will be granted[6] and judgment will be entered in favor of defendants. A separate Order follows.

Dated this 28th day of August, 2018 .

FOR THE COURT:

_____/s/_____
James K. Bredar
Chief Judge

---

[6] In light of the foregoing, the court need not address defendants' immunity defenses.